# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 827 | **DATE** | 3/5/2002 |
| **CASE TITLE** | James R. King vs. State Board of Elections, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Order and Opinion, the defendant-intervenors' petition for fees is granted. [Doc. #202]. Defendant-intervenors must submit a petition for attorneys' fee and related non-taxable expenses to the defendants, in accordance with Local Rule 54.3 by April 3, 2002. The defendants must file a joint statement, if necessary, with this court by May 2, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 06 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 204 |
| | Copy to judge/magistrate judge. | | |
| vg(lc) | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES R. KING | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>)<br>) No. 95 C 827 |
| STATE BOARD OF ELECTIONS, DAVID<br>E. MURRAY, LAWRENCE E. JOHNSON,<br>HANNELORE HUISMAN, JUDITH<br>JONES, LANDGON D. NEAL, THERESA<br>M. PETRONE, and WANDA REDNOUR, | )<br>) HONORABLE DAVID H. COAR<br>)<br>)<br>)<br>) |
| Defendants, | )<br>) |
| and | ) |
| BOBBY RUSH, TIMUEL BLACK, AL<br>JOHNSON, ELVIRA CARRIZALES,<br>NEOMI HERNANDEZ, and<br>THE CHICAGO URBAN LEAGUE | )<br>)<br>)<br>) |
| Defendant-Intervenors, | ) |
| and | ) |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant-Intervenors. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant-intervenors Congressman Bobby Rush, Timuel Black, Al Johnson, Elvira Carrizales, Neomi Hernandez, and the Chicago Urban League ("intervenors") petition this Court for fees and costs arising from their involvement in successfully defending the Illinois Fourth

-1-

Congressional District from constitutional challenge. For the reasons discussed below, the intervenor's petition for fees is granted.

## I. Background

In the aftermath of the 1990 census, the Illinois General Assembly was charged with drawing a new congressional redistricting plan to account for a reduction in the number of congressional seats apportioned to the state. The legislature failed to enact a plan. Anticipating a legislative deadlock, a number of plaintiffs-- including the Chicago Urban League which represented the interests of voters in the then-existing African-American majority district and individual Hispanic and African-American voters-- brought suit against the Illinois State Board of Elections ("State"). These plaintiffs sought to have the then-existing congressional map declared unconstitutional and proposed a new map encompassing a newly created majority-Hispanic district and preserving three majority African-American districts under § 2 of the Voting Rights Act, 42 U.S.C. § 1973.

On November 6, 1991, a different panel of this court enjoined the State from using the then-existing congressional districting plan. See Hastert v. State Board of Elections, 777 F. Supp. 634 (N.D. Ill. 1991). This court issued an order reapportioning Illinois' twenty congressional seats to create the Fourth Congressional District, the state's first majority-Hispanic district and directed the State to implement the court's redistricting plan. Two congressional elections have been held under this new congressional map, and in both elections, the Fourth District has chosen a Hispanic representative.

In the underlying suit, James King challenged the constitutionality of the Fourth District as well as the First Congressional District, a majority-African American district. The claim against the First District was abandoned in the midst of pre-trial discovery. The State and the defendant intervenors, some of whom were plaintiffs in <u>Hastert</u>, argued that King's action should be considered an attempt to modify or vacate the <u>Hastert</u> reapportionment order. Thus, they urged the court to transfer the case to the Hastert panel pursuant to Local General Rule 2.21D(8). This court denied that request while at the same time acknowledging that King's suit "either directly or indirectly challenged or implicated factual findings and legal conclusions made by the <u>Hastert</u> court." Mem. Op. at 4.

According to counsel for the intervenors, following the ruling, to preserve the gains made in <u>Hastert</u>, they offered to serve as special counsel to the Office of the Atttorney General. The State chose to proceed with staff counsel. Thus, the intervenors and the Department of Justice have born the costs and legal fees and played the major role in successfully defending the case. The State's role was passive. The State did not participate in the briefing of substantive issues, rarely cross-examined at trial, and put on no defense. Even with only nominal involvement by the State, the intervenors and the State prevailed and a judgement was entered in their favor.

## II. Discussion

The defendant-intervenors petition this court for a fee award against the State. The court agrees that the intervenors are entitled to recover fees and that the State is liable for the fee award.

The intervenors claim fees under 42 U.S.C. §§ 1973*l*(e) and 1988, pursuant to which a court "in its discretion, may allow the prevailing party a reasonable attorney's fee" in voting rights and § 1983 actions, respectively. 42 U.S.C. § 1973*l*(e); 42 U.S.C. § 1988. Because the two provisions contain nearly identical language and are driven by similar congressional purposes, the same standard applies to the evaluation of fee applications under both statutes. See Hastert. v. Illinois State Bd. of Election Comm'rs, 28 F.3d 1430, 1439 n.10 (7th Cir. 1993), cert. denied., 115 S. Ct. 426 (1994), (citing Hensley v. Eckerhart, 461 U.S. 424, 433 n.7, 103 S. Ct. 1933, 1939 n.7, 76 L.Ed.2d 40 (1983)).

Prevailing civil rights plaintiffs are presumptively entitled to fee awards See Hastert, 28 F.3d at 1439 (stating that prevailing parties "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust") (citing S. Rep. No. 94-925, at 40 (1975) reprinted in 1975 U.S. Code Cong. & Admin. News 774, 807 (addressing § 1973l(e); S. Rep. No. 94-1011, at 4 (1976) reprinted in 1976 U.S. Code Cong. & Admin. News 5908, 5912 (addressing § 1988)). On the other hand, prevailing defendants cannot recover fees against a losing plaintiff unless the plaintiff's suit is frivolous or vexatious. See Commonwealth v. Flaherty, 40 F.3d 57, 60 (3d Cir. 1994) (citing Christianburg Garment Co. v. EEOC, 434 U.S. 412, 98 S. Ct. 694, 54 L.Ed2d 648 (1978)).

This general prohibition against a defendant's recovery of fees conforms to the purposes of the civil rights acts. Fee awards are aimed at supporting private citizens who vindicate civil rights by acting as "private attorney generals." S. Rep. 1011 94th Cong., 2d Sess. 2, reprinted in 1976 U.S. Code Cong'l & Admin. News 5908, 5909; see also Donnell v. United States, 682 F.2d 240, 246 (D.C. Cir. 1982). Assessing fees against civil rights plaintiffs in favor of

prevailing defendants, then, would counter the goals of the civil rights acts by discouraging potential plaintiffs from initiating suits. Thus, the fee-shifting statutes promote private civil rights litigation by providing an incentive for eligible parties and affixing liability on culpable parties.

Regarding the defendant-intervenor's eligibility for fees, the court finds that they are entitled to a fee award. Where the equities of a case are compelling, the courts have created an exception to the general rule that precludes prevailing defendants from recovering fees. Although the courts have been hesitant to confront the issue head-on, they have suggested that, in certain circumstances, the procedural posture of the parties may be disregarded. Accordingly, the courts have indicated that parties may be realigned so as to allow defendants and defendant-intervenors to secure fee awards, even where the plaintiff's suit is not frivolous. See, e.g., Wilder v. Bernstein, 965 F.2d 1196, 1202 (2d Cir. 1992), cert. denied, 506 U.S. 954 (1992) (awarding fees under § 1988 to intervenors– some of whom had originally intervened as defendants); Commissioner Court of Median County, Tex. v. U.S., 719 F.2d 1179 (D.C. Cir. 1983) ("[N]either appellants' status as intervenors nor as defendants precludes an award of fees under the Voting Rights Act."); Donnell, 682 F.2d at 245-46 (permitting defendant-intervenors to obtain fee award in declaratory judgment actions). Legislative history also supports this approach. In fact, Congress expressly contemplated that defendants and defendant-intervenors would be eligible for fee awards:

> In the large majority of cases the party or parties seeking to enforce [civil] rights will be the plaintiffs and/or plaintiff-intervenors. However, in the procedural posture of some cases, the parties seeking to enforce such rights may be the defendants and/or defendant-intervenors.

S. Rep. 94-1011, at 4, n.4 (1976), reprinted in 1976 U.S. Code Cong'l & Admin. News 5908, 5912 (quoted in Wilder, 965 F.2d at 1202).

Indeed, awarding fees to the intervenors for their involvement in this case furthers the purposes underlying §§ 1973*l* and 1988. The defendant-intervenors fought to retain a majority-Latino congressional district and three African-American districts. They asserted a right to these majority-minority districts pursuant to the mandates of the constitution, voting rights statutes, and an order of this court. The congressional reports specifically cite to Shelley v. Kraemer, 344 U.S. 1, 68 S. Ct. 836, 92 L.Ed. 1161 (1948), in which plaintiffs sought to enforce a racially restrictive covenant on a sale of property against a minority defendant, and declaratory judgment actions brought under § 5 of the Voting Rights Act as instances in which defendants are entitled to fee awards. See S. Rep. 94-1011 at 4, n.4, reprinted in 1976 U.S. Code Cong'l & Admin. News 5909, 5912; S. Rep. 94-295 at 40, n.41 reprinted in 1975 U.S. Code Cong'l & Admin. News 774, 807; Donnell, 682 F.2d at 246. Reverse discrimination actions present an analogous situation in that, as in the type of actions cited by Congress, defendants are effectively cast in the position of traditional civil rights plaintiffs in their efforts to vindicate rights.

In addition, the unique procedural history of this case warrants an award of fees. Although FedKings' challenge was considered a separate case, the instant suit was, in essence, an attack on Hastert. As such, the intervenors' efforts in this case can also be construed as post-judgment work to ensure continued enforcement of the rights secured in Hastert. Post-judgment efforts are reimbursable. See, e.g., Bond v. Stanton, 630 F.2d 1231, 1233 (7th Cir. 1980); Plyler v. Evatt, 902 F.2d 273, 280-81 (4th Cir. 1990).

Further more, there is no question that the defendant-intervenors' efforts merit a fee award. To qualify as a prevailing party, a party, whether a plaintiff or defendant, named party or intervenor, must demonstrate that it contributed to the successes obtained in the case and, in the case of intervenors, that its contributions were nonduplicative of the efforts of the named party. Wilder, 965 F.2d at 1205; Donnell, 682 F.2d at 246-48. These threshold inquiries allay any concerns that parties will intervene needlessly in an attempt to recoup fees. The State does not dispute that the intervenors carried the weight of the defense while the State passively awaited the outcome. See 682 F.2d at 249 ("[I]ntervenor should be awarded attorneys' fees only if it contributed substantially to the litigation. This inquiry primarily entails determining whether the governmental ligitant adequately represented the intervenors' interest by diligently defending the suit.") Indeed, the intervenors can rightly claim the victory had in King as hard-won fruit of their labor.

Regarding liability for the fee award, equitable considerations certainly call for the State to bear the responsibility. The State argues that it is without fault and that it should not be liable for fees where it has not resisted a court order or otherwise failed to comply with the court. The State is not so blameless, however. As the Seventh Circuit noted in the Hastert case, "[t]he State Board of Elections is truly a nominal defendant, completely disinterested in the outcome of th[e] fight [over the configuration of the new congressional districts]" Hastert, 28 F.3d at 1439. The State's indifference did not change at the conclusion of Hastert. Rather, even after the appellate court's determination that the constitution demanded the inclusion of several majority-minority districts, the State refused to defend vigorously this constitutionally required map against King's challenge. Again, the State became a passive defendant, failing to take substantive positions

addressing the merits of the case. It was in this setting that the intervenors contacted the State and offered to serve as special counsel. The State declined the intervenors' overture, forcing the intervenors to assume the State's burden of defending the statutorily and constitutionally mandated map and preserve the gains achieved in Hastert.

The intervenors offer a thoughtful discussion of the policy implications at play in this case:

> In the redistricting context– where the state of the law remains in considerable flux and political jousting is a constant– almost any judgment is subject to some form of colorable challenge from a third party, whether that challenge is brought by way of intervention or collateral attack. If a governmental body that violates federal voting rights subsequently refuses to defend a court-ordered map against such a challenge, it should at the very least be responsible for bearing the full costs, including attorneys' fees, of such a defense by private intervenors.
> The alternative is a situation whereby recalcitrant governments can sit on the sidelines and all but invite collateral attacks on court-imposed remedies, while private plaintiffs with few resources at their disposal are forced to engage in prolonged bouts of post-judgment litigation without even the possibility of recouping expenses. Given the extraordinary complexity and expense of even the simplest voting rights case, such a regime would undoubtedly discourage private citizens from undertaking voting rights litigation in the first place. Worse yet, such a regime would encourage the sort of irresponsible legislative inaction that has characterized Illinois' congressional redistricting process over the past two decades. Such a result is precisely the opposite of what Congress intended in passing §§ 1973*l* and 1988.

Pet. at 9.

In view of the unique posture of this case, the court finds that the defendant-intervenors are entitled to recover fees. Usually, awarding fees to a prevailing defendant-intervenor would discourage plaintiffs from filing civil rights suits for fear of fee liability. Here, the plaintiff does not incur any liability because fees are shifted to the defendant, thereby avoiding any chilling effect on potential civil rights plaintiffs. In the context of this case, then, a fee award serves the

dual purpose of shielding from liability civil rights plaintiffs who have brought nonfrivolous claims while at the same time encouraging civil rights intervenors to protect the public interest.

In Flaherty, the Third Circuit suggested that prevailing defendant-intervenors could obtain fees from a co-defendant. 40 F.3d at 59. In a suit brought under 42 U.S.C. §§ 1981 and 1983, the Commonwealth of Pennsylvania alleged that the city of Pittsburgh discriminated in the hiring of minority applicants within the police department. Id. The district court entered a preliminary injunction requiring the city to enact what amounted to a quota system. Id. Years after the issuance of this order, the Fraternal Order of Police and individual white male applicants challenged the injunction. 40 F.3d at 59-60. The court consolidated the cases and deemed these new parties intervening defendants to the original suit between the Commonwealth and the city. 40 F.3d at 60.

The district court granted the intervening defendants' motion to dissolve the injunction.[1] Id. When the intervening defendants petitioned for fees incurred in obtaining the dissolution of the injunction, the district court assessed 75% of the fees against the plaintiff Commonwealth and 25% against the defendant city. Id. The appellate court reversed the district court's fee award against the Commonwealth and declined to depart from the rule that a prevailing party could recover from the plaintiff only where the suit was frivolous, unreasonable, or groundless. 40 F.3d at 62.

---

[1] The Commonwealth appealed the dissolution of the injunction to the Third Circuit. 40 F.3d at 60. When the district court granted partial summary judgement in favor of the intervening defendants on their claim of discrimination in the hiring of police officers, the appeals court dismissed the Commonwealth's appeal regarding the injunction as moot. Id. The summary judgment order was later affirmed on appeal.

In a discussion following that holding, the appellate court observed that the city was the culpable party – the city had failed to challenge a constitutionally infirm injunction and, in its passivity, had allowed the injunction to remain in effect for over fifteen years. Id. The court announced that, had the district court assessed the entirety of the fee award against the city, such an award would have been upheld. 40 F.3d at 60. Granted, the propriety of the fees assessed against the city were not before the court and the discussion was indeed dicta. Nevertheless, the Third Circuit's position is instructive and compelling.

The defendant city in Flaherty was not technically a prevailing party. Instead, because the defendant-intervenors moved to dissolve the injunction, the city, though it did not obtain a favorable judgment in its name, became the passive beneficiary. In that respect, the city occupied the same role as the State in this case. The State, completely disinterested in the outcome, played a nominal part throughout the lengthy litigation underlying this case. The State can boast of a judgment in its favor, to be sure, but it is only able to do so as a result of its freeriding on the efforts of the defendant-intervenors. Notwithstanding the favorable judgment, there is not much difference between the State and the defendant in Flaherty, whom the appellate court opined should be charged with the fees incurred by the defendant-intervenors. As noted in Flaherty, assessing fees against the State serves the "dual purposes of encouraging civil rights litigation by intervenors yet not chilling a plaintiff from filing suit." 40 F.3d at 62. And just as importantly, the censurable party bears the cost.

In concluding that the prevailing defendant-intervenors are entitled to fees from the prevailing defendant, it is incumbent upon this court to address League of United Latin American Citizens Council, No. 4434 v. Clements, 923 F.2d 365 (5th Cir. 1991) ("LULAC"). In a suit

against the state of Texas, LULAC claimed that the election of district judges diluted the votes of certain minorities. 923 F.2d at 367. Asserting her interests as a Texas voter and as a sitting Texas district judge, Judge Sharolyn Wood moved to intervene on the side of the defendant state. Id. The district court permitted her to intervene in her personal capacity. Id. On appeal, the case was resolved in favor of the defendant state and the defendant-intervenors. Id. Judge Wood requested fees against Texas pursuant to §§ 1988 and 1973*l*. Id.

The Fifth Circuit reiterated that prevailing defendants were barred from recovering fees unless the plaintiff brought a frivolous suit. 923 F.2d at 368. The court entertained the argument that it look beyond the procedural posture of the case and deem Judge Wood a plaintiff so that she could recover fees. However, the court concluded that Judge Wood could not qualify as a plaintiff because she had "participated in all ways as one defending against a civil rights claim and not as one seeking to establish and rectify a violation of civil rights." Id. In contrast, in the instant case, the court is presented with an intervening party who actually took on the role of the traditional civil rights plaintiff. As explained above, these intervenors brought charges of civil rights violations, convinced the court to rectify this violation in <u>Hastert</u>, and, in the present case preserved the rights they had asserted. The intervenors embraced the role of a private attorney general as envisioned in the civil rights acts.

The Fifth Circuit rejected the suggestion that the prevailing named defendant bear the expenses of the prevailing intervenors' fees. See 923 F.2d at 368-69. Judge Wood insisted that "the Texas attorney general could not have won the case without her and that he did not adequately defend her interests or even properly perform his official duties." 923 F.2d at 368. In response, the court dismissed her claim as one governed by state law rather than

by the civil rights fee-shifting statutes. Id.

This court respectfully disagrees. First of all, the State's explicitly neutral stance regarding the disposition of this case makes it difficult for the court to deem them the "prevailing party." Notwithstanding the determination of the formal judgment, the posture adopted by the State does not satisfy the standard for a prevailing party– that is, one who "succeeds on any significant issue in litigation which achieves some of the benefits the parties sought." Hastert, 28 F.3d at 1439-40. Furthermore, had the State lost the present case, the intervenors would have had to bring yet another suit to reinstate the majority- Hispanic and majority-African-American districts. In that hypothetical case, the instant intervenors would have been plaintiffs and, had they prevailed, they would have been plainly entitled to fees from the defendant State under the fee provisions of the civil rights statutes. The court sees no reason why they cannot recover fees at this juncture, before the court and the parties are subjected to another round of litigation. Allowing the intervenors to recover fees in the present context precludes this inefficient route.

In awarding fees to defendant-intervenors against the prevailing defendant, this court is aware that it is treading on uncharted grounds with no controlling precedent to serve as guideposts. Considering the equities involved in this case– namely, the sui generis nature of redistricting cases, see Hastert, 28 F.3d at 1444, coupled with the unusual procedural history of this case – the court believes that it has taken the right course.

The plaintiff's voluntary dismissal of his challenge to the First Congressional District, which the African-American intervenors defended, does not preclude intervenors Rush, Black and Johnson (collectively, "African-American intervenors") from recovering fees. The amount of the recovery remains an issue. As long as a party obtains "the substance of what it sought [to

achieve]," the party is entitled to fees, regardless of whether the party participation lasted through the trial. See Hastert, 28 F.3d at 1441 and n.12 (allowing plaintiff-intervenor to recover fees even where their claims were limited and they did not proceed to trial). The African-American intervenors advocated the preservation of the three majority-African American districts, and that was accomplished. 28 F.3d at 1443 (noting that in redistricting cases, "the touchstone for whether a party 'prevails' is simply whether the party's map . . . is ultimately adopted"). As such, the African-American intervenors qualify as prevailing parties and are entitled to fees.

### III. Conclusion

For the foregoing reasons, the defendant-intervenors' petition for fees is granted.

**Enter:**

_____
**David H. Coar**
**United States District Judge**

**Dated:** MAR 5 - 2002