Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 827 | **DATE** | August 19, 2003 |
| **CASE TITLE** | James R. King v. State Bd. of Elections, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Attorney's Fees

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth the attached Memorandum and Opinion Order, the Court grants Intervenors' fee petition [213-1] in the amount of $385,437.52. Defendants are ordered to pay Intervenors $371,185.00 in attorney's fees and $14,252.52 in costs. This case is closed.

(11) ■ [For further detail see attached Memorandum and Opinion order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | AUG 26 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | 231 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES R. KING, | ) |
|     Plaintiff, | ) No. 95 C 827 |
| v. | ) HONORABLE MICHAEL S. KANNE |
| | ) HONORABLE CHARLES R. NORGLE |
| STATE BOARD OF ELECTIONS, et al., | ) HONORABLE DAVID H. COAR |
|     Defendants, | ) |
| and | ) |
| BOBBY RUSH, TIMUEL BLACK, AL JOHNSON, ELVIRA CARRIZALES, NAOMI HERNANDEZ, and THE CHICAGO URBAN LEAGUE, | ) |
|     Defendant-Intervenors, | ) AUG 2 6 2003 |
| and | ) |
| THE UNITED STATES OF AMERICA, | ) |
|     Defendant-Intervenor. | ) |

## MEMORANDUM OPINION AND ORDER

On March 5, 2002, this Court found that Defendant-Intervenors Congressman Bobby Rush, Timuel Black, Al Johnson, Elvira Carrizales, Naomi Hernandez, and the Chicago Urban League ("Intervenors")[1] were the prevailing party in this case and that, under 42 U.S.C. § 1988,

---

[1] Intervenors' attorneys consisted of attorneys from MALDEF, Miner, Barnhill & Galland ("MBG"), and Robins, Kaplan, Miller, & Ciresi ("Robins").

1

they are entitled to attorneys' fees and costs. Pursuant to Local Rule 54.3, the parties attempted to resolve the fee issue but were unsuccessful. On June 20, 2002, Defendants State Board of Elections, David E. Murray, Lawrence E. Johnson, Hannelore Huisman, Judith Jones, Landon D. Neal, Theresa M. Petrone, and Wanda Rednour ("Defendants") and Intervenors filed a Local Rule 54.3 Joint Statement. Shortly thereafter, Intervenors filed a supplemental petition for attorney's fees because the Joint Statement did not accurately reflect the parties' areas of disagreement. It is this motion that is fully briefed and currently before this Court.

The Court must determine the proper amount of reasonable attorney's fees. In determining reasonable attorney's fees, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Gisbrecht v. Barnhart, 535 U.S. 789, 802 (2002) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This lodestar calculation offers a basis for an initial estimate of reasonable fees. Hensley, 461 U.S. at 433. The court, however, has the discretion to depart from this calculation if any billed hours appear excessive, unnecessary, or redundant. Id. at 434. Further, on a fee application, the claimant has the initial burden of documenting and proving its claims. Id. at 437.

The Intervenors' motion claims attorney's fees of $383,498.50 and costs of $14,252.52 (MALDEF claims $220,771.00 in attorney's fees and $12,831.28 in costs, MBG claims $154,695.50 in attorney's fees and $1,187.10 in costs, and Robins claims $8,032.00 in attorney's fees and $234.14 in costs).[2] Thus, the total amount of fees that Intervenors seek is $397,751.02.

---

[2] These figures, which are higher than the figures the parties submitted in their Joint Statement, are taken from the Intervenors' supplemental petition for attorney's fees and costs. The Joint Statement reflected the adjustment MALDEF had made after receiving Defendants' objections to the Intervenors' original fee petition; MALDEF had lowered its fee and cost demand to $211,510.31. In the supplemental petition, however, MALDEF requests the original,

2

Defendants object to several items in the supplemental fee petition. The Court addresses Defendants' specific objections to MALDEF's and MBG's calculations below. (Defendants do not object to Robins' fees).

### A.  DEFENDANTS' OBJECTIONS TO MALDEF'S FEES AND COSTS

As a preliminary matter, Defendants object to MALDEF attorney Maria Valdez's ("Valdez") hourly rate. Valdez seeks compensation at $315.00 per hour. Defendants argue that rate is unreasonable because Valdez's previous rate increases averaged approximately $10.00 per year. Because she charged $190.00 per hour in 1996, Defendants contend she is entitled to be compensated at a rate of $250.00 per hour rather than $315.00 per hour. This Court disagrees that Valdez should be bound to this lower rate.

A district court determines the proper hourly rate based on the market rate for the services performed by the prevailing party's attorney. If an attorney regularly charges by the hour, her regular billing rate is the presumptive market rate. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999). On the other hand, if an attorney, like Valdez in this case, does not have a "true billing rate" because she maintains a contingent-fee practice, then the court "should look to the next best evidence--the rate charged by lawyers in the community of 'reasonably comparable skill, expertise, and reputation.'" People Who Care v. Rockford Bd. of Ed. Sch. Dist. No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996) (internal citations omitted).

Valdez is a 1988 law school graduate with significant civil rights and voting rights experience. Intervenors have provided declarations from several lawyers in the community that support Valdez's rate of $315.00 per hour is consistent with the rate charged by other lawyers of

---

unadjusted amount.

3

comparable skill and experience. Indeed, Valdez's rate is often lower than the rate of other attorneys with her level of skill and experience. Defendants, in response, offer no rationale for their conclusion that the rate is excessive except their observation that, between 1996 and 1998, Valdez raised her rate by an average of $10.00 a year. Attorneys are free to set their rates according to the market at whatever level the market will support, providing that the rate is reasonable. Defendants seek to bind Valdez's current rate based on her rates from 1996-1998, yet they offer no principled reason to do so. The Court therefore overrules Defendants' objection to Valdez's hourly rate and concludes that Intervenors have met their burden of proving Valdez's $315.00 hourly rate is the prevailing market rate. The Court now turns to Defendants' substantive objections to MALDEF's fees and costs.

*1. FEES*

Defendants argue that several of MALDEF's requested hours should be denied because they are duplicative, excessive, or unclear. This Court may reduce the hours billed as unreasonable if it finds that the fees are inefficient, duplicative, or inadequately documented. See People Who Care, 90 F.3d at 1312.

a. Duplicative Hours

First, Defendants argues that 11.9 hours billed by MALDEF attorney Maria Valdez ("Valdez") are duplicative because MBG attorney Judson Miner ("Miner") performed the same tasks. Namely, Defendants challenge the 6.3 hours billed on 9/22/95 for reviewing and editing interrogatories and production requests, the 1.6 hours billed on 10/11/95 for a meeting with lawyers at the Department of Justice, and the 4.0 hours billed on 11/30/95 for attending the Crown deposition. This Court disagrees that these entries are duplicative. As the Intervenors

4

point out, Valdez and Miner represented two different interests in this litigation; Valdez represented Latino interests, and Miner represented African-American interests. Thus, their work on the same interrogatories and production requests, and their joint presence at meetings and/or a deposition are reasonable under the circumstances of this case. The Court denies Defendants' request to reduce MALDEF's hours billed on this basis.

b. Excessive Hours

Second, Defendants argue that several of MALDEF's entries should be reduced as excessive. The entries objected to are: (1) hours Valdez billed for reviewing cases and files, and drafting memos, which Defendants argue is excessive billing because those hours were "start up time"; (2) hours spent organizing files, which Defendants argue is excessive billing because that is "clerical work"; and (3) hours spent on phone conferences with co-counsel, which Defendants argue is excessive because they were unrelated to the case. The Court addresses each group of objections in turn.

*1. Start up time*

Defendants identify several of Valdez's entries as excessive on the basis that the hours are "start up time." After careful review of these entries, however, the Court finds that these hours were reasonably spent working on the case. The bulk of this preparatory time was spent researching issues, reviewing cases, or otherwise becoming familiar with the case and its issues. In In re Continental Illinois Securities Litig., 962 F.2d 566, 570 (7th Cir. 1992), the Seventh Circuit rejected the district court's across-the-board cuts in research and conference time a law firm charged in a securities matter stating that "[n]o matter how experienced a lawyer is, he has to conduct (or have conducted for him) research to deal with changes in the law, to address new

issues, and to refresh his recollection." As the merits of the instant case involved very complex issues, the Court finds the time Valdez spent researching the case and its issues to be reasonable, if not imperative. Short of their bald objection, Defendants offer no reason in support as to why this Court should reduce the hours that were spent on this preparatory work. Therefore, Defendants' objection on this basis is overruled.

## 2. *Clerical work*

Defendants object to paying Valdez's hourly rate for several hours that they have identified as time spent doing clerical work. For example, Valdez billed for hours spent organizing files, picking up documents, and reviewing documents and/or files. Defendants offer to pay Intervenors $50.00 per hour for these tasks rather than the $315.00 that Intervenors request. This Court agrees with Defendants.

Generally, courts "should disallow time spent on what are essentially 'clerical' or secretarial tasks." Spegon, 175 F.3d at 553 (citing People Who Care, 90 F.3d at 315)). Courts have held it is unreasonable to bill ministerial tasks at an attorney's rate when those tasks could have been delegated to an employee "at the next rung lower on the pay-scale ladder." Id. In their reply, Intervenors point out that a small office such as MALDEF has limited staff for such assignments and that these hours are therefore reasonable. They further argue that the hours Valdez billed for organizing files was not clerical work because it entailed review of legal documents for relevance for any number of litigation-projects. That very well may be true; however, this Court finds that these hours are excessive because the time entries were inadequately documented. For example, on 11/8/95, Valdez spent 6.3 hours "organizing files and reviewing documents." Without further explanation, this amount of time is excessive for

6

such a task. Similarly, on 12/2/95, Valdez spent 2.1 hours organizing files, and she spent another 2.8 hours just two weeks later "getting files in order and picking up documents." Again, Intervenors fail to show how these hours were not spent performing mere ministerial tasks. As the burden of documenting and proving its claims lies with Intervenors, the Court sustains the Defendants' objections as to the hours spent on clerical work.[3] The Court therefore reduces Intervenors' attorney's fees by awarding 17.7 hours[4] of clerical work at a rate of $50 an hour rather than at $315 an hour.

### 3. Phone conferences with co-counsel

Third, Defendants argue that time Valdez spent in discussion with co-counsel or drafting an agreement with co-counsel is excessive because it is not related to the case. This Court disagrees. As this litigation was very complex, and Valdez represented a unique and different interest than her co-counsel did, it is reasonable for her to collaborate and discuss strategy as to how they will proceed in litigating the case. Defendants' objection on this ground is therefore overruled.

### c. Hours that are Unclear

Finally, Defendants object to several entries that they have identified as unclear or vague. Namely, there are eight entries between 9/9/96 and 9/15/96 totaling 48.4 hours with the explanation "research and draft." Intervenors argue that these entries are not unclear if this Court

---

[3] The Court, however, overrules Defendants' objection to hours they identify as clerical work that Valdez spent researching and/or drafting memoranda. Unlike organizing files or picking up documents, research and writing are not typical ministerial tasks.

[4] The 17.7 hours of clerical work derives from the following entries: 6.3 hours on 11/8/95; 2.1 hours on 12/2/95; 2.8 hours on 12/18/95; 1.8 hours on 3/17/97; and 4.7 hours on 5/1/97.

7

reviews the docket or pleading file to find out what was being prepared during that time period. That, however, is not the Court's job; rather, the onus is on the claimant to adequately document and prove its claims. While Intervenors explain in their reply brief that they filed a motion to affirm and a supporting memorandum in September 1996, "research and draft" is not sufficiently descriptive to warrant the compensation they seek. Thus, this Court reduces the hours spent on "research and draft" by 50%, from 48.4 to 24.2 hours. See Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000) (holding that when a fee petition is vague or inadequately documented, a court may either strike the problematic entries or reduce by a reasonable percentage).

*2. COSTS*

Defendants object to several of MALDEF's costs, arguing that: local transportation is not recoverable; local phone calls and supplies are not recoverable; copying costs are excessive; and faxes are not clearly identified. The Court overrules each of these objections.

It is well established that "expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates--expenses for such things as postage, long distance phone calls, xeroxing, *travel*, paralegal and expert witnesses--are part of the reasonable attorneys' fee allowed by the Civil Rights Attorney Fees Awards Act." Heiar v. Crawford County, 746 F.2d 1190, 1203 (7th Cir. 1984). MALDEF requests $12,831.28 in costs, and these costs are precisely the type of expenses contemplated in Heiar. First, cab fare is a travel cost and the Court finds MALDEF's $10.00 request reasonable. Second, the $418.49 MALDEF seeks for supplies were not overhead; rather, they were spent on the litigation, such as for trial exhibits. Similarly, contrary to Defendants' contention, MALDEF's phone calls and

8

faxes were not regular office overhead. As to the phone calls, Intervenors point out that there was a typographical error on the fee petition and they in fact seek compensation for non-local, rather than local, phone calls. Further, as Valdez stated in her affidavit, MALDEF's office technology allowed her to keep track of their phone and fax use by entering the case number each time she made a long distance phone call or sent a fax. Finally, Defendants argue that MALDEF's 64,629 copies are excessive in light of MBG's 1,406 copies. Unlike MBG, however, MALDEF proceeded to trial and produced voluminous documents as well as two separate briefings in the United States Supreme Court. The Court therefore overrules Defendants' objections as to MALDEF's costs and finds that the Intervenors have met their burden in demonstrating that the costs they seek were necessary and reasonable.

### B. DEFENDANTS' OBJECTIONS TO MBG'S FEES AND COSTS

Defendants make similar objections to MBG attorney Miner's time entries. Namely, Defendants argue that several of MBG's requested hours should be denied because they are unclear and/or unrelated to the case and because some of the hours are excessive. The hours Defendants identify as unrelated and/or unclear are hours Miner billed for discussion with co-counsel and for drafting co-counsel agreement. As stated above, the Court finds that these hours spent discussing strategy with co-counsel about this case are not unreasonable or excessive. Defendants' objection on this ground is overruled.

Second, Defendants object that the hours Miner billed for researching cases and opinions relating to voting rights and for researching the fee issue are excessive given that Miner charges expert rates in this area of the law. Defendants assume that, because Miner is an expert, he should not need to conduct this much research. This assumption is without merit and is

unpersuasive. Not only is racial gerrymandering as it relates to voting rights a complex area of the law, but the law in this area is constantly evolving. In addition, a defendant-intervenor's right to recover fees from a co-defendant was a completely novel issue. The Court therefore overrules Defendants' objection that Miner's fees are excessive.

Finally, as to MBG's costs, Defendants object to the compensation of cab fare and they object to the copy price MBG charges. First, as stated previously, MBG can recover travel costs; the Court thus overrules this objection. Second, the Court finds that MBG's copy charges are not excessive. MBG seeks compensation for 1,406 copies at $0.20 per page. Defendants argue that rate is too high for in-house copying costs. This Court disagrees. "Charges for in-house reproduction may not exceed the charges of an outside print shop." Haroco v. Am. Nat. Bank and Trust Co. of Chicago, 38 F.3d 1429, 1441 (7th Cir. 1994) (citing Martin v. United States, 931 F.2d 453, 455 (7th Cir. 1991)). MBG submitted an affidavit stating that the print shop it generally uses for copying jobs, Record Copy Service, charges approximately $0.18 to $0.20 per page. Further, copy rates of $0.20 have been found to be reasonable by other courts in this circuit. See McDonald v. Village of Winnetka, No. 00 C 3199, 2003 WL 1989656, at *2 (N.D. Ill. Apr. 30, 2003) (collecting cases). The Court therefore overrules Defendants'objection as to the rate MBG charges for copies.

### C. SUMMARY OF ATTORNEY'S FEES AND COSTS

After making the reductions listed above, the Court finds that Intervenors are entitled to recover attorney's fees of $371,185.00 and costs of $14,252.52 (MALDEF is awarded $208,457.50 in attorney's fees and $12,831.28 in costs, MBG is awarded $154,695.50 in attorney's fees and $1,187.10 in costs, and Robins is awarded $8,032.00 in attorney's fees and

$234.14 in costs). Thus, the total amount of fees that Intervenors are awarded is $385,437.52. The Court arrives at this sum by subtracting 41.9 hours from the 687.40 hours at $315.00 per hour submitted by MALDEF for Valdez. It then added 17.7 hours at $50.00 per hour to the total for the clerical work performed by Valdez.

## CONCLUSION

For the reasons set forth above, the Court grants Intervenors' fee petition in the amount of $385,437.52. Defendants are ordered to pay Intervenors $371,185.00 in attorney's fees and $14,252.52 in costs.

Enter:

_____  _____  _____
**Michael S. Kanne**        **Charles R. Norgle**       **David H. Coar**
**United States Circuit Judge**  **United States District Judge**  **United States District Judge**

Dated: August 19, 2003

11